UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RAD W. HAMILTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:04-CV-802 CAS |
| ) | |
| ENTERPRISE LEASING COMPANY OF ) | |
| ST. LOUIS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Enterprise Leasing Company of St. Louis's ("Enterprise") motion for summary judgment and motion for sanctions for premature pleading. Plaintiff Rad Hamilton filed two motions opposing Enterprise's motion for summary judgment and a response in opposition to defendant's motion for sanctions.[1] For the following reasons, the Court will grant defendant's motion for summary judgment and deny defendant's motion for sanctions.

**I. Background**

Hamilton filed this action against his former employer Enterprise alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981. Hamilton alleged that Enterprise discriminated against him based on age, sex, race, and national origin by forced termination from employment, failure to promote, failure to provide study materials and review, hostile work environment, and promotion of younger workers. In an order issued January 12, 2005, the Court dismissed plaintiff's claims under Title VII, claims under the Age Discrimination

---

[1]Hamilton filed his first memorandum in opposition to defendant's motion for summary judgment on June 27, 2005, several days before defendant filed its motion for summary judgment on July 8, 2005. Then, Hamilton filed a response in opposition to defendant's motion for summary judgment and motion for sanctions on July 11, 2005.

in Employment Act ("ADEA") that occurred more than 300 days prior to the filing date of plaintiff's charge questionnaire, and plaintiff's claims of age, sex, and national origin discrimination under 42 U.S.C. § 1981. Enterprise brings this motion for summary judgment regarding plaintiff's remaining claims.

## II. Summary Judgment Standard

This Court must grant summary judgment if, based upon the pleadings, admissions, depositions and affidavits, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Board of Education, Island Trees v. Pico, 457 U.S. 853, 863 (1982). The moving party must initially demonstrate the absence of an issue for trial. Celotex Corp., 477 U.S. at 323. Any doubt as to the existence of a material fact must be resolved in favor of the party opposing the motion. Board of Education v. Pico, 457 U.S. at 863. Nevertheless, once a motion is properly made and supported, the non-moving party may not rest upon the allegations in his pleadings but must instead set forth specific facts showing that there is a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e); Buford v. Tremayne, 747 F.2d 445, 447 (8th Cir. 1984). Summary judgment must be granted to the movant if, after adequate time for discovery, the non-moving party fails to produce any proof to establish an element essential to the party's case and upon which the party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322-24.

**III. Discussion**

   **A. Facts**

The Court finds that the following facts are true for purposes of summary judgment.[2] Enterprise is an automobile rental and leasing company based in St. Louis, Missouri. Within its operations, Enterprise has two divisions: rental and callback. The callback division handles customer issues by telephone, including insurance-related transactions, and the rental division comprises the stand-alone facilities where customers rent or lease vehicles. The management opportunities within the callback division of Enterprise are limited. Most management opportunities are in the rental division. In order to be eligible for advancement to a management position in the rental division, an employee must successfully complete an internal test called the MA test. The MA test pertains to Enterprise's rental operations. Employees are selected to take the MA test by rental division management.

Hamilton is a 62 year old white male. Enterprise hired Hamilton at the age of fifty-six as a Level I non-exempt employee in its rental division. One of the individuals who interviewed Hamilton and hired him was Jeffrey Weiss, then Group Human Resources Manager. Hamilton worked in the rental division until November 12, 1999 when he requested a leave of absence. Enterprise granted

---

[2]Enterprise submitted a statement of uncontroverted material facts. Hamilton did not submit a statement of material facts as to which he contends a genuine issue exists. Local Rule 4.01(E) states that "every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific reference to portion of the record, where available, upon which the opposing party relies." Further, "the opposing party shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D. Mo. L.R. 4.01(E). Hamilton submitted eight facts that he asserts represent the basis of his lawsuit pursuant to Title VII, but the Title VII claims have been previously dismissed by the Court. See Order of January 12, 2005. The Court therefore deems admitted defendant's statement of material facts. Moreover, the "facts" submitted by plaintiff are not supported by citation to the record.

plaintiff that leave and provided plaintiff with a $3,000.00 loan. When Hamilton returned to Enterprise in January 2000, his original position was no longer available. Enterprise offered Hamilton another rental position, but Hamilton did not want that position because it was too far away from his home. Enterprise then offered plaintiff an available position in the callback division, which Hamilton accepted.

### 1. MA Test and MA Study Materials

Hamilton wanted to take the MA test, but was never allowed to take the test. Hamilton alleges that several younger and non-white employees were allowed to take the MA test instead of him, including during the last year of his employment at Enterprise. Hamilton admits that all of those employees worked in the rental division when they were selected for and allowed to take the MA test. Hamilton is not aware of any Level I employee in the callback division allowed to take the MA test. No Level I employee from the callback division has ever been allowed to take the MA test. Hamilton does not allege that any younger employees in the callback division were treated more favorably than he was.

Prior to fall 2003, Enterprise issued study materials for the MA test. Enterprise provided these materials to employees selected to take the MA test. Enterprise stopped preparing and disseminating the study materials in the fall of 2003. Hamilton asserts that other employees were given these study materials and he thinks that this was done during his last year of employment. Hamilton obtained a copy of the study materials from another employee who had been provided with them by Enterprise. Hamilton does not allege that any Level I callback center employee was provided study materials for the MA test. But, Hamilton contends that if he were non-white he would have been given the study materials.

## 2. Promotions

Hamilton applied for several promotions in the rental division while he was working in the callback division. Enterprise did not promote Hamilton to those positions. Hamilton asked Weiss how he could become eligible for the MA test and promotion. Weiss met with Hamilton several times and told him he should return to the rental division to get promoted. Weiss told Hamilton there were few advancement opportunities working in the callback division, and there were none as to the promotions Hamilton had sought. Hamilton decided not to return to the rental division, despite the opportunity to do so.

Hamilton only sought one promotion within the year prior to the date he filed his charge questionnaire against Enterprise on March 9, 2004.[3] The one promotion Hamilton sought was a management position in Enterprise's truck rental division, which Hamilton states became available in February 2004. Between May 15, 2003, and March 3, 2004, four openings similar to the one sought by plaintiff were posted for application, only two were filled, and both were filled by employees who had passed their MA tests and were currently working on the rental side. Hamilton admits that he needed to successfully complete the MA test to be eligible for the promotion he sought. The individual promoted to the truck rental management position had taken and passed the MA test and worked in the rental division.

Hamilton alleges that all non-white employees were promoted before him. Hamilton assumed that whenever a minority employee was promoted at Enterprise instead of him, it was an issue of race.

---

[3]Hamilton also asserts that he applied and interviewed for a promotion given to an Enterprise employee named Shari Westbrook, but he cannot recall the timing of that promotion. In his affidavit, Weiss asserts that Westbrook was promoted to a management position in the callback division (the same position Hamilton applied for) on September 10, 2001. This promotion occurred outside of the 300 day period preceding plaintiff's filing of his EEOC charge and will not be considered by the Court.

Hamilton asserts that Keith Hoeferlin, his supervisor, came to him and expressed concern about an African-American female employee who had not been promoted. Hamilton alleges that Hoeferlin expressed that he was worried that the African-American female should be promoted to avoid a discrimination lawsuit.

### 3. Diversity Team

During his employment at Enterprise, Hamilton was a member of the Diversity Team that was assembled to consider issues regarding workplace diversity at Enterprise. In November 2003, Enterprise restructured the Diversity Team. As part of that restructuring, Enterprise required that all Diversity Team members be Level II employees, obtain a recommendation for the team from their managers, and receive "meets requirements" or better on their most recent evaluations. Enterprise also reduced the number of members from thirteen to seven, replacing all members, including Hamilton, except for the manager of the Team and one other employee. Hamilton admits that his removal from the Diversity Team had nothing to do with his race.

### 4. Termination

Hamilton's last job with Enterprise was in the callback center located within the Farmers' Insurance offices. Hamilton agrees that he was put in that position because Enterprise "thought he could fix it." In that position, Hamilton handled callback automobile rental issues for Enterprise exclusively related to its customer Farmers' Insurance. While Hamilton was in that position, several employees and customers made complaints about him. Hamilton does not dispute that the complaints were made, although he alleges they were inaccurate. [4] (Def.'s Ex. E). As a result of the complaints, Hamilton received various disciplinary memoranda, including a written warning dated July 16, 2003.

---

[4]The documented complaints alleged that Hamilton was rude to customers and rental agents, refused to return phone calls or pages, did not promptly answer the phone or check voicemail messages, and gave incorrect information regarding rentals, among other things.

This warning stated that "a consistent trend of complaints [exists] regarding your harsh communication and argumentative style" and it was "extremely detrimental to the workflow of the in house program and the performance that effects [sic] the flat rate program at Farmers." (Def.'s Ex. F).

Hamilton asserts that he was improperly blamed for performance issues because Teresa Shriver, a Call Center Manager in Kansas City, was upset that Farmers' Insurance office in St. Louis received a flat-rate rental program that she wanted for Kansas City. Hamilton believes that Shriver intentionally tried to sabotage the Farmers' Insurance program and he was simply caught up in the sabotage. Hamilton states that Shriver was able to influence his superiors in St. Louis and he was the scapegoat for her frustration. Hamilton agrees that this situation had nothing to do with his age or race. Hamilton also believes that he was blamed because of the difficulty of the position he held at Farmers' Insurance, which he admits had nothing to do with his age or race.

On March 2, 2004, Hamilton was issued a performance warning memorandum. (Def.'s Ex. G). Hamilton was told that he was being placed on probation due to the performance issues, effective immediately. Alternatively, Hamilton was given the option to resign with five weeks of severance pay. Hamilton chose to resign, but refused to sign the severance agreement. Enterprise still paid Hamilton the severance pay. Hamilton filed a charge questionnaire with the Equal Employment Opportunity Commission ("EEOC") on March 9, 2004. Plaintiff never filed a formal charge of discrimination against Enterprise.

Finally, Hamilton alleges that during a conversation in March 2001, Hoeferlin, his supervisor, told him that he was too slow and Matt (a younger colleague of Hamilton's) was younger and faster and "can whip through call backs faster." Enterprise investigated the claim[5] and found no evidence

---

[5]The record does not show when this investigation occurred.

to support Hamilton's allegation. Hoeferlin had no supervisory authority over Hamilton after September 2003, and no involvement with any promotion Hamilton sought in the final year of his employment or the decision to place him on probation. Hoeferlin has never had a role in selecting individuals to take the MA test. Hamilton admits that neither Hoeferlin nor anyone else at Enterprise every made any age-related comments to him either before or after the alleged statement by Hoeferlin in March 2001.

## B. ADEA Claim

"Under the ADEA, it is unlawful for an employer to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). Liability depends on whether age actually motivated the employer's decision. That is, the plaintiff's age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome." Tatom v. Georgia-Pacific Corp., 228 F.3d 926, 930-31 (8th Cir. 2000) (internal quotations and citations omitted).

### 1. Statement from Supervisor

Hamilton asserts that he has direct evidence of age discrimination because during a conversation in March 2001, Keith Hoeferlin told him that he was too slow and Matt (a younger colleague of Hamilton's) was younger and faster and could whip through call backs faster. Enterprise states that their investigation found no support for Hamilton's allegation. "[D]irect evidence . . . is evidence of conduct or statements by persons involved in making the employment decision directly manifesting a discriminatory attitude, of a sufficient quantum and gravity that would allow the factfinder to conclude that attitude more likely than not was a motivating factor in the employment decision." Erickson v. Farmland Indus., Inc., 271 F.3d 718, 724 (8th Cir. 2001) (citations omitted).

8

The Court must "distinguish comments which demonstrate a discriminatory animus in the decisional process from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." Breeding v. Arthur J. Gallagher and Co., 164 F.3d 1151, 1157 (8th Cir. 1999) (quoting Fast v. Southern Union Co., Inc., 149 F.3d 885, 889 (8th Cir. 1998)). "Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support such an inference that the attitude was more likely than not a motivating factor in the employer's decision." Walton v. McDonnell Douglas Corp., 167 F.3d 423, 426 (8th Cir. 1999)(citations omitted).

Hoeferlin was a decisionmaker unrelated to the decision making process at issue in this case. Hoeferlin did not supervise Hamilton after September 2003 and had no involvement in any promotion sought by Hamilton during his last year of employment or the decision to place him on probation. Also, Hoeferlin never had a role in selecting individuals to take the MA test. Hamilton does not contradict these facts as established by Enterprise. The comment was not related to any of Hamilton's claims regarding failure to promote, failure to allow him to take and to provide study materials for the MA test, removal from the diversity team, or termination.

The three year time span between Hoeferlin's comment and the employment actions at issue also shows that there is no temporal connection. Hamilton's claims under the ADEA are limited to actionable claims that occurred no more than 300 days prior to the date his EEOC charge was filed, which was March 9, 2004. (See Order of January 12, 2004; Defs.' Ex. C). Hamilton alleges that Hoeferlin made the statement in March 2001. Assuming Hoeferlin made the comment, the event occurred far outside of the time period for filing a charge of discrimination with the EEOC.

Plaintiff asserts that there were continuing violations. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of

9

discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Hamilton's allegations of failure to promote, termination, failure to give him MA study materials, failure to permit him to take the MA test, and removal from the diversity team were separate discrete acts. Only the acts occurring within the 300 days prior to Hamilton's charge of discrimination are actionable, so Hoeferlin's alleged comment is a stray remark and not relevant to Hamilton's actionable claims.

### 2. Failure to Promote

To establish a prima facie case on a failure to promote claim under the ADEA, a plaintiff must show that (1) he is a member of a protected group; (2) he applied for and was denied a position for which he was qualified; (3) despite his qualifications, he was rejected; and (4) the position was given to a person of similar qualifications who was not a member of the protected group at the time plaintiff's request for promotion was denied. See Lyoch v. Anheuser-Busch Cos., Inc., 139 F.3d 612, 614 (8th Cir. 1998). In a failure to promote case, a plaintiff must only demonstrate that he met the minimum qualifications for the position. Turner v. Honeywell, 336 F.3d 716, 721 (8th Cir. 2003). If the prima facie case has been established the employer has the burden of producing evidence that its actions were based on a " legitimate, nondiscriminatory reason," and the burden then shifts to the plaintiff to prove that the reason provided by the employer was a pretext for discrimination. Lyoch, 139 F.3d at 614. To prove his ultimate burden of persuasion, however, Hamilton must prove that age actually motivated Enterprise's decision. Nelson v. Boatmen's Bancshares, Inc., 26 F.3d 796, 800 (8th Cir. 1994).

The Court does not believe that Hamilton has alleged a prima facie case. Hamilton admitted that he was not qualified for the promotion that he applied for in the truck rental division in February

10

2004. In order to be promoted, Hamilton needed to take the MA test. Before he would be allowed to take the MA test, he had to work in the rental division. Hamilton admits that he did not work in the rental division despite an opportunity to do so and therefore was not eligible to take the MA test. Completion of the MA test was a minimum requirement for promotion in the rental division. If Hamilton could not take the MA test, then he could not be promoted. Therefore, Hamilton was not qualified for a management position in the rental division and he cannot make a prima facie case for his failure to promote claim under the ADEA.

Plaintiff has also failed to meet the fourth requirement of the prima facie case: that the promotion was given to someone with similar qualifications who was outside the protected group. Hamilton has no evidence or knowledge of any Level I callback division employees, including younger or non-white co-workers, who were allowed to take the MA test, given MA study materials, or promoted to a management position in the rental division. (Pl's. Dep. pp. 44:22-25, 48:4-11, 122:12-25-123:1-18).

In the alternative, even if Hamilton alleged a prima facie case, Enterprise has articulated a legitimate, nondiscriminatory reason for its actions, which Hamilton cannot show is a pretext for discrimination. As discussed earlier, Hamilton was not qualified for the position. Failure to meet minimum requirements for a position is a legitimate non-discriminatory reason for denial of a promotion. Hamilton has no evidence that age discrimination actually motivated Enterprise in its decision not to promote him. Therefore, plaintiff's claim of age discrimination regarding denial of promotion fails and summary judgment will be entered for Enterprise on that claim.

### 3. Failure to Permit Plaintiff to Take MA Test or Provide MA Study Materials

Next, Hamilton contends that Enterprise discriminated against him due to his age because it failed to provide him with MA study materials and did not permit him to take the MA test. To

11

establish a prima facie case of age discrimination in this case, plaintiff must show (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances indicating age discrimination, or similarly situated employees who were not members of the protected class were treated more favorably. See Tatom, 228 F.3d at 931; Johnson v. Runyon, 137 F.3d 1081, 1082 (8th Cir.), cert. denied sub nom Johnson v. Henderson, 525 U.S. 916 (1998).

The Court finds that Hamilton has failed to make a prima facie case. As discussed above regarding plaintiff's failure to promote claim, plaintiff was not qualified to take the MA test or receive MA study materials because he was employed in the callback division. The MA study materials were only given to Enterprise employees selected to take the MA test, and the MA test was only given to employees in the rental division. Hamilton also fails to meet the fourth requirement in that he has no evidence of any similarly situated employees outside the protected group being allowed to take the MA test or receiving study materials. Hamilton has not refuted Enterprise's assertion that all employees given the MA study materials and allowed to take the MA test worked in the rental division. Therefore, plaintiff's claim of age discrimination regarding access to MA study materials and permission to take the MA test fails and summary judgment will be entered for Enterprise on that claim.

### 4. Removal from Diversity Team

Plaintiff's complaint asserts that plaintiff was removed from the Diversity Team & Career/Family Focus Group because of his age. To establish a prima facie case of age discrimination regarding removal from the Diversity Team, plaintiff must show (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances indicating age discrimination, or similarly

12

situated employees who were not members of the protected class were treated more favorably. See Tatom, 228 F.3d at 931.

Again, plaintiff has failed to make a prima facie case. Removal from the diversity team is not an adverse employment action. An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. See Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000) (ADEA case); Spears v. Missouri Dep't of Corrections and Human Resources, 210 F.3d 850, 853 (8th Cir. 2000) (Title VII case). "Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, see Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1016 (8th Cir. 1999), but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not, see Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997)." Spears, 210 F.3d at 852. Hamilton has no evidence that removal from the Diversity Team changed any of his working conditions. Membership on the Diversity Team was not a required work activity. The number of Diversity Team members was reduced from thirteen to seven. Only two members remained after the restructuring. Hamilton was one of eleven people removed from the Team and he has no evidence that the two remaining members were similarly situated employees treated more favorably than he was or that there was age discrimination. Also, additional requirements for team membership were adopted after the restructuring and Hamilton did not meet those requirements.[6] Therefore, summary judgment will be entered in favor of defendant on plaintiff's claim of age discrimination in his removal from the Diversity Team.

---

[6]After the restructuring, Enterprise required that all Diversity Team members be Level II employees, obtain a recommendation from their managers, and receive "meets requirements" or better on their most recent evaluations. (Weiss Aff. ¶ 19).

### 5. Forced Termination

To demonstrate constructive discharge, a plaintiff must show the employer "deliberately made or allowed [his] working conditions to become so intolerable that the employee had *no other choice* but to quit." Jones v. Fitzgerald, 285 F.3d 705, 715-16 (8th Cir. 2002) (emphasis in original) (citation and internal punctuation omitted). To be liable, the employer must have intended to force the employee to quit, or at least have reasonably foreseen the employee's resignation as a consequence of the unlawful working conditions it created. Jackson v. Arkansas Dep't of Educ., Voc. & Tech. Educ., 272 F.3d 1020, 1026 (8th Cir. 2001), cert. denied, 122 S. Ct. 2366 (2002). Furthermore, the employee must also show that a reasonable person, from an objective viewpoint, would find the working conditions intolerable. Id. at 1027. A plaintiff must take affirmative steps short of resigning that a reasonable employee would take to make his conditions of employment more tolerable. See Jones, 285 F.3d at 716. "To act reasonably, an employee has an obligation not the assume the worst and not to jump to conclusions too quickly." Tidwell v. Meyer's Bakeries, Inc., 93 F.3d 490, 494 (8th Cir. 1996).

On March 2, 2004, Chad Kavanaugh issued plaintiff a performance memorandum. In this memorandum, Kavanaugh stated that Hamilton was being placed on probation for ninety days. (Def's. Ex. G). The memorandum cautioned that if Hamilton failed to meet or surpass the group's fiscal year average or received any additional complaints from customers or colleagues, disciplinary action would be taken up to and including termination. Id. Hamilton was verbally given the option to resign with five weeks severance pay. (Pls.'s Dep. p. 110:18-21 and Def.'s Ex. D). Hamilton chose to resign, but did not sign the severance agreement. Enterprise paid Hamilton the severance pay.

Hamilton has no evidence that Enterprise "deliberately made or allowed [his] working conditions to become so intolerable that [he] had *no other choice* but to quit." Jones, 285 F.3d at 715-16. Hamilton does not submit any evidence about what made his working conditions intolerable or how Enterprise created intolerable working conditions. The evidence shows that any problems with Hamilton's working conditions were created by Hamilton. Hamilton admits that customers and other employees made several complaints about his job performance over a period of several months. Hamilton was placed on probation and given the option of resigning with severance pay if he did not want to be on probation. There is no evidence that Enterprise forced Hamilton to resign. Further, Hamilton has not shown any affirmative steps that he took to make his conditions of employment more tolerable. Therefore, Hamilton's assertion that he was constructively discharged is without merit and summary judgment will be entered for Enterprise on this claim.

### C. Section 1981- Reverse Discrimination Claim

"The purpose of 42 U.S.C. § 1981 is to prohibit discrimination in the performance, modification and termination of contracts and to protect the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b)." Williams v. Lindenwood University, 288 F.3d 349, 355 (8th Cir. 2002) (internal quotations omitted). In analyzing intentional discrimination under § 1981, the standards used in Title VII claims are applied. Reedy v. Quebecor Printing Eagle, Inc., 333 F.3d 906, 907 (8th Cir. 2003) (citing Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002)). The statute of limitations for § 1981 claims is four years and Hamilton may assert claims for actions that occurred within four years prior to filing this lawsuit. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004); Jackson v. Homechoice, Inc., 368 F.3d 997, 999 (8th Cir. 2004).

In Hamilton's § 1981 claim, he asserts the same discriminatory actions as listed in his ADEA claim: (1) failure to promote, (2) denial of study materials for the MA Test, (3) denial of opportunity to take the MA test, (4) removal from the Diversity Team, and (5) forced termination. To establish a prima facie case of reverse racial discrimination regarding promotions, the plaintiff must show that he is white, he applied for and was qualified for an open position, he was rejected for that open position, and his employer hired someone of a minority race. Hammer v. Ashcroft, 383 F.3d 722, 724 (8th Cir. 2004) (citing Duffy v. Wolle, 123 F.3d 1026, 1036 (8th Cir. 1997)). Plaintiff must also show "background circumstances [that] support the suspicion that the defendant is the unusual employer who discriminates against the majority." Hammer, 383 F.3d at 724 (citations omitted).

As with his ADEA claims, Hamilton has failed to make a prima facie case. As articulated earlier, plaintiff was not qualified for any open position. Hamilton had not taken the MA test. Hamilton could not take the MA test because he did not work in the rental division. Further, Hamilton has no evidence of background circumstances that would show that Enterprise is the unusual employer who discriminates against the majority. Hamilton's § 1981 claim of reverse race discrimination regarding promotions is without merit. Summary judgment will be entered for Enterprise on this claim.

Likewise, Hamilton's claims that he was not allowed to take the MA test or provided with MA study materials because of reverse racial discrimination fails as well. In his deposition, Hamilton states without any support that if he were black or nonwhite, he would have been given the study materials. (Hamilton Dep. 46:12-15). Hamilton also testified that "every employee that was a minority was promoted before me . . . and that had to do with minority or non-minority." (Hamilton Dep. 12:10-20). Hamilton also testified, "If a minority was promoted before me, I took that as -- a younger minority individual, male or female -- I took that as an issue of race, yes, I did." (Hamilton

16

Dep. 13:2-5). Hamilton has no evidence that a minority Level I callback center employee or any other Level I callback center employee was provided with study materials for the MA test or allowed to take the MA test. The Court finds that this claim is without merit and summary judgment will be granted in favor of Enterprise on this claim.

Next, the Court will address Hamilton's claim regarding removal from the Diversity Team. In his complaint, Hamilton states that he was "terminated from Group 01 Diversity Team and Career/Family Focus Group [and was told] he was an "embarrassment to Enterprise Rent-A-Car for being a 5 year level 1 employee and not being promoted." (Compl. ¶ 9). The complaint asserts that this action was discrimination based on Hamilton's race. (Comp. ¶ 10). In his deposition, Hamilton was asked if it was his position that if he were not white, he would not have been removed from the diversity team. (Hamilton Dep. p. 15:15-18). Hamilton responded,

> I don't know that so much to be the truth. They wanted an older person. They were trying to fill individuals that represented different segments of a diversified employment structure within the Enterprise system. I was an older person and consequently I was a level one five-year employee they had passed over, for whatever the reasons were, and then I was an embarrassment to them and I was removed. Be it black, white, red, green, or purple, that was how I took it at that time. And I still stand on that belief today.

(Hamilton Dep. 15:19-25-16:1-4). In his preemptive memorandum in opposition to summary judgment, Hamilton asserts that Hoeferlin asked him for advice regarding a potential discrimination suit brought by a black female employee, Tammy Buford, who was a troublemaker and had not been promoted. (Hamilton Dep. p. 59:1-8). Hamilton alleges that Hoeferlin wanted to know if Hamilton should give Buford a promotion because she might file a lawsuit. (Id.) Hamilton asserts that this behavior is evidence that Enterprise management discriminated "against [him] and other employees who were disliked." Hamilton's claims are without merit. Hamilton's discussion with Hoeferlin is not evidence of discrimination because it is not illegal for a company to deny promotions to or

17

terminate employees because management dislikes them for non-illegal reasons. Further, in his deposition, Hamilton first states that race was part of his removal from the diversity team and then states that he was removed because Enterprise was embarrassed that he was still a level one employee for five years regardless of his race. (Hamilton Dep. 15:12-25-16:1-4). As discussed above on plaintiff's ADEA claim, the diversity team was restructured and its membership reduced, and only two of the original thirteen members remained after the restructuring. Hamilton has no evidence that would suggest that his removal from the Diversity Team was based on his race. The Court will enter summary judgment in favor of Enterprise on this claim.

Finally, plaintiff cannot assert that he was constructively discharged because of reverse racial discrimination. As previously discussed, Hamilton has not identified any intolerable working conditions created by Enterprise. Being placed on probation alone is not an intolerable working condition. In his deposition, plaintiff details how his problems with other employees and customers were caused by Enterprise Manager Teresa Shriver's displeasure that a particular program was set up in St. Louis rather than Kansas City. (Hamilton's Dep. 82:6-25-85:1-25). Hamilton does not have any evidence that Shriver's "prejudice" against him was due to his race. (Hamilton Dep. 86:23-25-87:1-9). Therefore, the Court will enter summary judgment in favor of Enterprise on this claim.

None of Hamilton's claims show background circumstances that would support the position that Enterprise is the unusual employer who discriminates against the majority. Plaintiff's claims under § 1981 fail as a matter of law and judgment will be entered in favor of Enterprise on these claims.

## IV. Motion for Sanctions

Enterprise seeks sanctions against Hamilton for disclosing confidential information from the unsuccessful mediation held in this case. Hamilton opposes the motion asserting that his actions were

18

unintentional because he believed that the session was only confidential if a settlement were reached in this case. In his preemptive memorandum in opposition to defendant's motion for summary judgment, Hamilton disclosed the amount Enterprise offered him during the mediation. Local Rule 6.04 states, "All written and oral communications made or disclosed to the neutral are confidential and may not be disclosed by the neutral, any party, or other participant, unless the parties otherwise agree in writing." E.D. Mo. L.R. 6.04. The Order Referring Case to Alternative Dispute Resolution stated that the case would be governed by Local Rules 6.01-6.05. See Order of March 9, 2005.

The Court does not believe that the plaintiff's disclosure warrants sanctions. Therefore, the Court will deny defendant's motion for sanctions.

**VI. Conclusion**

In conclusion, for the foregoing reasons, the Court will enter summary judgment in favor of defendant Enterprise on plaintiff's claims under the ADEA and 42 U.S.C. § 1981 and will deny defendant's motion for sanctions.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment is **GRANTED**. [Doc. 45]

**IT IS FURTHER ORDERED** that defendant's motion for sanctions is **DENIED**. [Doc. 48]

An appropriate judgment will accompany this memorandum and order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 17th day of October, 2005.